# AFFIDAVIT

**ROBERT BRYANT, COII**
  PLAINTIFF

  VS.
  DEFENDANTS.

STATE OF ALABAMA
EASTERLING CORRECTIONAL FACILITY

I, <u>Linda E. Teal</u>                    hereby certify and affirm that I am an <u>ASAIII</u>                    , at Easterling Correctional Facility; that I am one of the custodians of <u>Employee Disciplinary Records</u> at this institution; that the attached document(s) are true, exact, and correct photocopies of certain documents maintained here in the <u>Warden's Office - Easterling C.F.</u>    ; and that I am over the age of twenty-one years and competent to testify to the aforesaid documents and matters stated therein.

I further certify and affirm that said documents are maintained in the usual and ordinary course of business at the Easterling Correctional Facility; and that said documents (and the entries therein) were made at, or reasonably near, the time that by, or from information transmitted by, a person with knowledge of such facts, events, and transactions referred to therein are said to have occurred.

This, I do hereby certify and affirm to on this the  <u>31st</u>  day of  <u>May</u>  , <u>2006</u>  .

*Linda E. Teal*

SWORN TO AND SUBSCRIBED BEFORE ME THIS THE  <u>31st</u>  DAY OF  <u>May</u>  , <u>2006</u>  .
My Commission Expires:  <u>7-15-07</u>

*Linda A. Wilkinson*
NOTARY PUBLIC


EXHIBIT A

# INVESTIGATIVE REPORT

| ALABAMA DEPARTMENT OF CORRECTIONS |  | INVESTIGATION & INTELLIGENCE DIVISION |

**Confidential-For Official Use Only**

Offense: <u>Alleged Officer Misconduct</u>   Case No.: <u>06-9245</u>

Location: <u>Easterling Correctional Facility</u>   County: <u>Barbour</u>   Date of Offense: <u>12-30-2005</u>

| Victim(s) | Subject(s) |
|---|---|
| Inmate Ricky Davis<br>W/M, AIS 173073 | Sgt. Robert Bryant, B/M, DOB 8-2-1967<br>111 Segars Circle, Troy, Alabama 36081 |

## DETAILS:

This investigator was requested by Art Crumpton, Assistant Director of I & I Division, to investigate allegations of alleged officer misconduct involving an assault on inmate Ricky Davis, W/M, AIS 173073, of Easterling Correctional Facility. I was advised that inmate Davis had accused Sergeant Robert Bryant of assaulting him, inmate Davis, on 12-30-2005 in the Segregation Unit. I was also advised that a body chart had not been ordered on the inmate after this alleged assault had taken place. I was further advised that inmate Davis did have red marks to his facial area after the alleged assault took place. I was also advised that there were inconsistent statements given by officers and medical personnel concerning this investigation. Warden Mosley had requested an investigation into this matter.

On Thursday, 1-12-2006, this investigator along with Investigator Eric Bascomb traveled to Easterling Correctional Facility where we first spoke with Warden Mosley and Captain Sconyers concerning this case. In speaking with Warden Gwen Mosley and Captain Sconyers concerning this

| Criminal | x | Non-Criminal | | Internal | |
| Unfounded | | Pending Investigation | | Closed or Inactive | x |
| | | Cleared by Arrest | | Not Cleared | |

| Copies of Report to | | | |
|---|---|---|---|
| Commissioner | x | Date of Report | January 27, 2006 |
| D/A | x | | |
| D/C | | Report Made by | Errick Demus |
| Other | | | |
| | | Report Typed by | Casandra Henderson |

case, we were advised that on the night of 12-30-2005 at approximately 2:45 a. m., inmate Ricky Davis, W/M, AIS 173073, was housed in Cell #B11 in the Segregation Unit. We were advised that inmate Ricky Davis stood his bed up on its end and was using the bed to bang on the cell door from the inside. It was stated that Officer Kerry Williams, B/M, DOB 8-3-1967, of 14399 Highway 84, Elba, Alabama, 36323, and Officer William Floyd, B/M, DOB 12-7-1967, of 2241 County Road 7755, Troy, Alabama, 36081, went to the cell of inmate Ricky Davis to get the inmate to cooperate. It was stated that at that time, the officers called Sergeant Bryant to the area, who at that time ordered Officers Kerry Williams and William Floyd to escort inmate Ricky Davis to the Segregation Shift Office. At that time, upon arriving at the shift office, Officers William Floyd and Kerry Williams stated that Sergeant Robert Bryant ordered them to step out of the shift office while he, Sgt. Bryant, spoke with inmate Ricky Davis concerning his behavior in the Segregation Unit, and also concerning his continuing to be irate and cursing the officers there in the shift office.

We were advised that just before the officers had taken inmate Ricky Davis into the shift office, Nurse Icey McKinnon, B/F, DOB 1-18-1953, of 31 Bennett Street, Midland City, Alabama, 36350, had entered the Segregation Unit for pill call. We were further advised that Nurse McKinnon was ordered to cease her pill call because of the commotion that inmate Davis was causing in his cell by banging his bed on the door. It was stated that after the inmate was taken to the Segregation Shift Office, he was then immediately taken from the shift office back to his cell, at which time, Nurse McKinnon was allowed to continue her pill call in the Segregation Unit. It was stated that when Nurse McKinnon came to Cell 11, she looked in inmate Ricky Davis' cell, who advised her that he needed a body chart. At that time, Nurse McKinnon stated that she observed a red mark to inmate McKinnon's face. At that time, Nurse McKinnon stated she told Officers Kerry Williams and William Floyd that she needed to do a body chart on the inmate. At that time, she stated that the officers advised her that they would bring the inmate to her in the infirmary when pill call was over.

This investigator was also advised that Sergeant Robert Bryant had previous allegations of assault on inmates that were brought against him.

These investigators were also advised that Nurse McKinnon had stated that Sergeant Bryant had stated to her that the inmate did not need a body chart after she had called for the inmate later after she had arrived back at the infirmary. We were further advised that Sergeant Robert Bryant had stated that he did not make that statement to Nurse McKinnon.

This investigator, along with Investigator Bascomb, first interviewed Nurse McKinnon. In interviewing Nurse McKinnon, she advised that on 12-30-2005 at approximately 3 a. m., she was escorted to the Segregation Unit by Sgt. Baxley to do pill call. Nurse McKinnon stated that upon arriving in the Seg Unit, she was instructed to wait in the office because an incident was occurring on the B-side of the Segregation Unit. Nurse McKinnon stated that Sgt. Bryant came to the Segregation Unit and inquired, "Who was the inmate that was kicking the cell door?" Nurse McKinnon stated that due to the incident that had occurred, she was asked to delay her pill call. She stated that at that time, she returned to the healthcare unit to pick up some cups. She stated she was then escorted back to the Segregation Unit again by Sgt. Baxley. She stated that upon entering the B-side to do pill call, a lot of inmates began hollering that a man in 11-Cell needs a body chart or medical assistance due to having been beat up. Nurse McKinnon stated she was able to view inmate Ricky Davis, who was in 11-Cell, and she stated that inmate Davis advised that he had been beaten up and needed a body chart. She stated she noticed redness to the right side of his face. Nurse McKinnon stated she explained to Officer Williams and another officer with him that she needed to do a body chart on

inmate Davis. She stated that Officer Williams told her that they would bring him over after feeding time. Nurse McKinnon stated that at approximately 4:10 a. m., she called the Segregation Unit and spoke with the cube officer, which is Officer Ibeth Jones, and told her that the officer needed to bring Mr. Davis over to the healthcare unit for a body chart. Nurse McKinnon stated that Ibeth Jones advised her that she would notify the officer. Nurse McKinnon stated that at approximately 4:15 a. m., she received a call from the shift commander, Sgt. Bryant, who asked her when did it become protocol for nurses to do a body chart on an inmate just because he asked for one? Nurse McKinnon stated that at that point, Sgt. Bryant stated to her that this inmate does not need a body chart. Nurse McKinnon stated she then said, okay, and that was the end of the conversation with Sgt. Bryant. Nurse McKinnon was adament that Sgt. Robert Bryant advised her that this inmate does not need a body chart. It should further be mentioned that Nurse McKinnon noted this conversation on her daily log from the healthcare unit. A copy of that log and her statement will be added to this case file, as well as the detail tape-statement that was obtained from her by Investigators Errick Demus and Eric Bascomb.

This investigator then obtained a detailed tape-statement from Officer Kerry Williams, who stated that he was in fact working in the Segregation Unit on 12-30-2005. He stated that he, along with Officer William Floyd, noted that inmate Ricky Davis, who was housed in Cell B11, began slamming his bed against the cell door. Officer Floyd instructed inmate Davis to cease his action. Inmate Davis did not comply. At approximately 2:45 a. m., Officer Floyd reported the incident to Sgt. Bryant. At approximately 2:55 a. m., Sgt. Bryant entered the Segregation Unit and instructed Officer Floyd and Officer Kerry Williams to remove inmate Davis from his cell and escort him to the Segregation Office. At approximately 3:03 a. m., Officer Kerry Williams stated that he, along with Officer Floyd, was instructed to leave the Segregation Office and step outside of the door of Segregation Office. Officer Williams stated that he remained outside the office for approximately two to three minutes, and stated the during that time that Sgt. Robert Bryant was speaking with inmate Ricky Davis in the office, Officer Williams stated he could not see inside the office and he does not know if Sgt. Robert Bryant struck the inmate or if the inmate struck Sgt. Bryant. Officer Kerry Williams stated that while he was standing outside of the door, the door was not completely closed. However, he stated he could not hear the conversation or look inside the office to see what was going on. Officer Kerry Williams further advised that after Sgt. Bryant verbally reprimanded the inmate, Sgt. Bryant ordered him, Officer Williams, and Officer William Floyd to escort the inmate back to his cell. Officer Kerry Williams stated that upon escorting inmate Ricky Davis back to his cell, he did not see any red marks on inmate Ricky Davis. Officer Kerry Williams was advised of the seriousness of this allegation, but Officer Kerry Williams continued to state that he did not see or observe any redness to the area of inmate Ricky Davis' face. Officer Kerry Williams's statement is self-explanatory and will be added to this file.

This investigator then obtained a detail statement from Officer Ibeth Jones, who was the cubicle officer. Officer Jones stated that she did observe Sgt. Robert Bryant enter the Segregation Unit at approximately 2:55 a. m., and that he then went down to inmate Ricky Davis' cell, at which time, she stated that inmate Davis was removed from his cell and escorted back to the shift office by Officers William Floyd and Kerry Williams to speak with Sgt. Bryant. Officer Ibeth Jones stated that she could not see into the Segregation Office or hear anything that went on in Segregation Office. She stated that she observed Officers William Floyd and Kerry Williams enter and exit the Segregation Office on numerous occasions during that particular time. And she also stated that at approximately 3:08 a. m., Officers Floyd and Williams's escorted inmate Davis back to his cell. She stated she has no further knowledge of anything that transpired between the officers, including Sgt.

Robert Bryant and inmate Ricky Davis. Officer Jones' statement is self-explanatory and will be added to the file.

This investigator then interviewed Officer William Floyd, who stated he also was assigned in the Segregation Unit on 12-30-2005. He stated that after the inmate was making a commotion by standing his bed on the end and banging the bed against the cell door, Sgt. Robert Bryant was then called, who shortly thereafter arrived in the Segregation Unit. Officer William Floyd stated that at that time that he was instructed by Sgt. Bryant to escort the inmate to the Segregation Office, along with Officer Williams, Officer Floyd further advised that after arriving at the Segregation Office, inmate Ricky Davis continued to speak in a loud and boisterous manner and would not calm down. At that time, Officer William Floyd stated that he, along with Officer Kerry Williams, was asked by Sergeant Bryant to step out of the Segregation Office. Officer William Floyd stated that he and Officer Kerry Williams then stepped outside of the Segregation Office, at which time he stated that the door did not close all the way, but he stated he could not see inside of the office. He stated that Sgt. Bryant remained in the office with inmate Davis for approximately two to three minutes, at which time Sgt. Bryant opened the door and ordered him, Officer Floyd, and Officer Kerry Williams to escort the inmate back to his Segregation unit. Officer William Floyd stated he also did not observe any red marks to the facial area of inmate Ricky Davis while he was escorting him back to his cell. Officer William Floyd's statement is self-explanatory and will be added to this file.

This investigator, along with Investigator Bascomb, then interviewed inmate Ricky Davis in regards to this investigation. At that time, inmate Ricky Davis stated that he was taken from his cell by Officers William Floyd and Kerry Williams at the direction of Sgt. Bryant. Inmate Davis stated that after arriving in the shift office, Sgt. Bryant asked Officers William Floyd and Kerry Williams to leave the Segregation Office. Inmate Davis stated that Sgt. Bryant then immediately locked the door of the Seg Office and then struck him in his face two or three times with his open hand. Inmate Davis stated he received a black eye that is the result of these strikes. Inmate Davis stated that Sgt. Bryant was poking him in his face and told him that he better go back to his cell and not say anything else. Inmate Davis stated that he was immediately escorted back to his cell, and stated that he did not say anything to anybody until Nurse McKinnon came pass his cell. He stated he hollered for her and told her that he needed to have a body chart done because he had been struck by Sgt. Bryant. Inmate Davis stated that at that time, his face was in fact red, and that he received these injuries as a result of being struck by Sgt. Bryant. Inmate Davis's statement is self-explanatory and will be added to this file.

This investigator next obtained a detailed tape-statement from Sgt. Robert Bryant, B/M, DOB 8-2-1967, of 1111 Segars Circle, Troy, Alabama, 36081. In speaking with Sgt. Robert Bryant, he stated he was called to the Segregation Unit by Officer William Floyd. Sgt. Bryant stated that once he arrived in the Segregation Unit, he was advised that inmate Ricky Davis had stood his bed up on its end and was using the end of the bed to slam onto the cell door. Sgt. Bryant stated that he, along with Officers William Floyd and Kerry Williams, then went to Cell-11, and at that time, he, Sgt. Bryant, spoke with inmate Ricky Davis, and that inmate Davis was complaining about him wanting to be moved from that particular cell. Sgt. Bryant stated he then ordered Officers William Floyd and Kerry Williams to escort the inmate to the Segregation Office so that he could be reprimanded. Sgt. Bryant stated that once they arrived at the Segregation Office, he asked Officers Williams and Floyd to step out of the office because he felt like inmate Ricky Davis was mad at these officers for not removing him and placing him in another cell or for not removing his bed or giving him another bunk. Sgt. Bryant further advised that inmate Ricky Davis continued to be loud and boisterous in the office. Sgt. Bryant stated that the door was left open. He stated he then verbally reprimanded the inmate. He

stated that at no time did he place his hands on the inmate or strike the inmate, and that the inmate did not strike him. Sgt. Bryant stated that after he spoke with the inmate, he only had the inmate in there for approximately 1 or 1 ½ minutes. He stated he then pushed the door open and then asked Officers Floyd and Williams to escort the inmate back to his cell. This investigator asked Sgt. Bryant if he ever asked or advised Nurse Icey McKinnon not to do a body chart on this inmate or that the inmate does not need a body chart. At that point, Sgt. Bryant stated that he never stated to Nurse McKinnon not to do a body chart on inmate Ricky Davis, or the inmate does not need a body chart.

As previously mentioned in Nurse McKinnon's log, she stated that she was in fact advised by Sgt. Bryant that inmate Ricky Davis did not need a body chart. Because of this inconsistency, and because of past allegations against Sgt. Bryant, this investigator is requesting a polygraph examination be administered to Sgt. Robert Bryant in regards to this case. Sgt. Robert Bryant has denied striking the inmate. Sgt. Bryant has stated he would submit to a polygraph test. Inmate Ricky Davis has stated that he was in fact struck two to three times in his face. Also, in speaking with Warden Mosley and Captain Sconyers and LPN Icey McKinnon, inmate Ricky Davis did have red marks to his facial area right after this incident was reported on 12-30-2005.

Upon arriving at Easterling Correctional Facility, this investigator did obtain photographs of the right side of inmate Ricky Davis' face, which did not show, at that time, any red marks to his face. However, there was a small mark underneath his right eye, but it is not known if this was caused by an assault by Sgt. Robert Bryant.

It should further be mentioned that on 12-30-2005, at approximately 7:35 a. m., approximately 4 ½ hours after this incident occurred, a body chart was completed on inmate Ricky Davis by personnel in the healthcare unit, and it did note that there was redness to the right side of inmate Ricky Davis's face. A copy of that body chart will be added to this case file.

As previously mentioned, a request will be made for a polygraph examination to be administered to Sgt. Robert Bryant.

This investigation will continue.

---

Errick Demus, Investigators
Alabama Department of Corrections
Investigations and Intelligence Division

ED/ch

1

# INVESTIGATIVE REPORT
# SUPPLEMENT

ALABAMA DEPARTMENT OF CORRECTIONS



INVESTIGATION & INTELLIGENCE DIVISION

Confidential-For Official Use Only

Offense: <u>Alleged Officer Misconduct</u>      Case No. _____ <u>06-9245</u>

Location: <u>Easterling Correctional Facility</u>      County: <u>Barbour</u>   Date of Offense: <u>12-30-2005</u>

| Victim(s) | Subject(s) |
|---|---|
| Inmate Ricky Davis<br>W/M, AIS 173073 | Sergeant Robert Bryant<br>B/M, DOB 8-2-1967<br>111 Segars Circle, Troy, Alabama, 36081 |

## SUPPLEMENT:

After conferring with Investigator Ed Sasser, a polygraph examination at Easterling Correctional Facility was scheduled for 1-26-2006 at 8 a. m., in which Sgt. Robert Bryant had agreed to be tested along with inmate Ricky Davis.

On Monday 1-23-2006, Investigator Sasser received a phone call from Sgt. Robert Bryant who stated that he would not submit to a polygraph test.

On Monday 1-23-2006, Investigator Ed Sasser did polygraph inmate Davis, who passed the polygraph test. The pertinent questions that was asked of inmate Davis was, was he, inmate Davis, slapped in the face by Sgt. Robert Bryant while in the shift office. No deception noted.

| Criminal _____ | Non-Criminal _____ | Internal _____ |
| Unfounded _____ | Pending Investigation _____ | Closed or Inactive _xx_ |
| | Cleared by Arrest _____ | Not Cleared _____ |

Copies of Report to
Commissioner ___x___
D/A ___x___
D/C _____
Other _____

Date of Report   <u>February 2, 2006</u>

Report Made by <u>Errick Demus</u>

Report Typed by <u>Casandra Henderson</u>

2

The investigation of this case has revealed that Sgt. Bryant had inmate Ricky Davis escorted to the Seg shift office by Officers Kerry Williams and William Floyd. Sgt. Bryant then ordered the officers out of the Seg shift office and closed the door, and this is where this alleged assault was said to have taken place.

Nurse McKinnon, who entered the Segregation Unit right after the assault was said to have occurred, was advised by inmate Davis that he needed a body chart, because he had just been assaulted. Nurse McKinnon observed redness to the right side of inmate Davis's face and requested that the inmate be brought to the healthcare unit after she finished her pill call in the Segregation Unit. Nurse McKinnon advised that shortly after arriving back at the healthcare unit, she received a call from Sgt. Bryant who told her that inmate Davis did not need a body chart. Nurse McKinnon's medical log reflects that she received that phone call from Sgt. Bryant stating that the inmate did not need a body chart.

Sgt. Bryant has denied making the statement that the inmate did not need a body chart. However, a body chart was never ordered by Sgt. Bryant on inmate Davis. Sgt. Bryant had previously advised that he would gladly submit to a polygraph test.

It should be mentioned that after approximately 4 ½ hours after the alleged assault had taken place, a body chart was completed on inmate Davis by the next shift, which reflected redness to the right side of inmate Davis's face.

It should further be mentioned that Warden Mosley and Captain Sconyers both observed redness to the face of inmate Davis after this assault was reported.

This investigation indicates that statements made by Nurse McKinnon and inmate Davis appear truthful. As previously mentioned, Sgt. Bryant, who previously agreed to submit to a polygraph test, later called and stated that he would not submit to a polygraph test. This information will be forwarded to Warden Mosley for consideration.

_____
Errick Demus, Investigator
Alabama Department of Corrections
Investigation and Intelligence Division

ED/ch